[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
This is a dispute arising from an agreement entered into by the parties for the plaintiff to purchase from the defendant a certain used Chevrolet van. The plaintiff's complaint alleges misrepresentation by the defendant as to the condition of the said motor vehicle; unjust enrichment; and violation by the defendant of the Connecticut Unfair Trade Practices Act., Sections 42-110a-110g ("CUTPA"). The defendants answered, denying any wrongdoing by defendants, and by way of special defense, alleging breach of contract by plaintiff.
 II
Based on the testimony and evidence presented at trial, the court finds the following facts:
On or about April 14, 1995, the plaintiff as buyer and the defendant D'Amato as owner and officer of Auto Outlet, Inc., seller, entered into a written agreement for the purchase and sale of a used 1989 Chevrolet van at an agreed price of four thousand seventy ($4,070.00) dollars. The vehicle at the time of the agreement had an odometer reading of 125,000 miles. Prior to signing the plaintiff inspected the vehicle at least twice, test drove it and discussed certain concerns of plaintiff regarding the condition of the vehicle, and the defendant undertook to do certain repairs to meet those concerns. The agreement stated that the vehicle was sold "as is", subject to certain written promises to the buyer. At this time, plaintiff gave the defendant a check for $500.00 as a deposit on said sale. Plaintiff was aware he had the right to have an independent inspection of said vehicle prior to sale but chose not to do so.
After the defendant had completed certain repairs purporting to meet plaintiff's expressed concerns, as recorded in the WRITTEN PROMISES section of the purchase agreement, the plaintiff took possession of the van on or about April 18, 1995. At this time, plaintiff gave defendant a check #5799 in the amount of three thousand five hundred seventy dollars ($3,570.00) in full and final payment of the amount owing.
On or about April 19, 1995, the plaintiff brought the van to a motor vehicle repair shop, Mal's Auto and Truck Repair, Inc. ("Mal's") for inspection. On that same day Mal's reported there were problems with the vehicle, including worn brake drums and CT Page 2056 that the vehicle was "not safe". On April 20, 1995, the plaintiff stopped payment on check #5799.
On the same day, April 20th, the plaintiff telephoned the defendant D'Amato and advised him that there were problems with the vehicle and that he had stopped payment on check #5799. The conversation was acrimonious and the parties parted on bad terms. That same day, or shortly thereafter, the plaintiff wrote to the defendant, accusing him of misrepresenting the condition of the subject motor vehicle and offered defendant two alternatives to settle the matter; The plaintiff would have the vehicle repaired and would send the defendant a check for the amount due and owing on the purchase agreement less the costs of repair; or: plaintiff would return said vehicle to the defendant upon refund by the defendant of the plaintiff's initial deposit of $500.00 plus $20.00 costs for the plaintiff's stop payment order; otherwise the plaintiff declared, he would file a complaint against defendant with the Connecticut motor vehicle department for "fraud and misrepresentation".
On or about April 28, 1995, the plaintiff ordered Mal's to effect the repairs deemed necessary to correct the problems cited by Mal's. By invoice dated May 8, 1995, Mal's billed the plaintiff for the sum of one thousand seven hundred thirty nine dollars and eleven cents ($1,739.11) which included costs of repair plus $151.96 for two new tires. Said invoice indicated an odometer reading of 125,444 miles.
On or about May 24, 1995 the defendant repossessed the subject motor vehicle. On or about June 6, 1995 the defendant sold the van to a third party for the amount of four thousand three hundred dollars ($4,300.00)
 III
A threshold issue is whether the plaintiff, in the transaction at issue, was a "consumer", as defined by General Statutes, Section 42-220 (5), and thus entitled to the added protections of General Statutes, Chapter 743f. Section 42-220
(5), in pertinent part, defines a consumer as "the purchaser, other than for purposes of resale, of a used motor vehicle normally used for personal, family or household purposes". The plaintiff, owner of a catering business known as Culinary Concerts, claimed he purchased the said vehicle for personal use but conceded he intended to use it for both business and personal CT Page 2057 use. Defendant D'Amato testified plaintiff had indicated the vehicle was to be used in his catering business. The statute's definition of "consumer" focuses not on the actual or planned use of a given vehicle but on the "normal use" of a vehicle of a given type. While a fire engine, a hearse or a truck tractor is unlikely to be deemed a motor vehicle normally used for personal, family or household purposes, regardless of whatever use a purchaser of same might intend, the normal use of a van of the type of the subject vehicle could include personal or business use, or both. See Altberg v. Paul Kovacs Tire Shop, Inc.,31 Conn. App. 634, 635 (Statute applicable to purchase of a "used truck").
The court concludes that the statute's definition of "consumer" is sufficiently flexible to bring the subject transaction within the ambit of General Statutes, Chapter 743f.
 IV
While the agreement signed by the parties clearly stated that this was an "as is" sale and purchase the disclaimer provisions of General Statutes, Section 42-224 do not apply. This vehicle at the time of sale was less than seven years of age and the purchase price was more than three thousand dollars.
Rather, the transaction at issue was subject to the provisions of General Statutes, Section 42-221 and the plaintiff acquired the protections afforded by this statute. Among its provisions said statute includes the following:
 "(b) Each contract entered into by a dealer for the sale to a consumer of a used motor vehicle which has a cash price of three thousand dollars or more but less than five thousand dollars, shall include an express warranty, covering the full cost of parts and labor, that the vehicle is mechanically operational and sound and will remain so for at least thirty days or one thousand five hundred miles of operation, whichever period ends first . . ."
Because the contract at issue here failed to include the express warranty cited above, the said contract was voidable at the option of the plaintiff. The plaintiff, by his act of issuing CT Page 2058 a stop payment order on check #5799, did avoid the contract. At that point plaintiff was entitled to the return of his $500.00 deposit and defendant was entitled to the return of the subject vehicle. In the alternative, plaintiff had the right, pursuant to General Statutes, Section 42-223, to demand that defendant honor the warranty contained in Section 42-221 (b). Instead, plaintiff voided the contract by issuing the stop payment order but continued to possess and to use the subject vehicle. The plaintiff made no demand on defendant to honor the warranty but expended $1,739.11 on repairs plaintiff deemed necessary and two new tires. Defendant refused to return plaintiff's $500.00 deposit and eventually repossessed the van.
Plaintiff then sought to enter into a new contract, tendering a check in the amount of $2,000.00, which plaintiff represented to be the difference between the $3,750.00 owed on the original purchase price and the cost of repairs. The defendant rejected this proposal and the matter made its way to this court. Had the plaintiff not avoided the contract, his remedy under the statute would have been the costs of parts and labor to repair the truck so as to fulfill the warranty, assuming a breach of warranty was established. Atlberg v. Paul Kovacs Tire Shop, Inc.,31 Conn. App. 634,641. In effecting the repairs by Mal's the court finds that the plaintiff acted gratuitously, authorized neither by the terms of the purchase agreement nor by statute.
 V
Plaintiff alleges that defendant misrepresented the condition of the said motor vehicle.
The agreement entered into by the parties on April 14, 1995 contained WRITTEN PROMISES TO THE CONSUMER drafted by the plaintiff and accepted by the defendant. These promises were as follows:
(1) New Starter. (2) Rear Shocks replaced. (3) All safety systems operating to pass CT. inspection (though insp. not required). (4) Flush and refill coolant.(5) Source of oil leak and repair. (6) Top off all fluids. (7) Copy of recp't for oil repairs starter.
At the time he took possession of the van, on April 18, 1995, plaintiff was given copies of two invoices for work done on said vehicle. One, from Monro Muffler/Brake, was for installation of CT Page 2059 two shocks at a total cost of $86.72, and was dated April 17, 1995. The other invoice, from John's Auto Repair was for parts and labor to "install coolant, flush cooling systems, install air filter [install] PCV clean throttle body and breather tubes, check fluid".
Based on the testimony and evidence presented, the court concludes defendant substantially complied with WRITTEN PROMISES (1), (2), (4), (6) and (7). Evidence regarding (5) was inconclusive; apparently Mr. D'Amato tried to address the leak problem by installing a PCV valve while Mr. White of Mal's installed an intake gasket to resolve the problem. The cost of the PCV valve was $5.42. The cost of the intake gasket was $22.91.
Compliance with WRITTEN PROMISE (3) was more problematical. The term safety system as understood by the parties was never defined, but the court infers that brakes would be considered part of a motor vehicle's safety system by any rational definition of the term. Mr. White testified that the vehicle's brake drums were worn and not up to Department of Motor Vehicle standards. There was no evidence presented as to what these standards were. Mr. White asserted that the brake drums would not pass motor vehicle inspection but conceded that a state motor vehicle inspection station would not typically remove the drums to inspect them and that the brakes of the van could work and pass inspection. He conceded that the parts of a motor vehicle that had logged 125,000 miles could be expected to show some wear. While the other repairs made by Mal's quite likely improved the vehicle, it was not clear that they were to integral parts of the vehicle's safety system. The court finds that plaintiff has failed to establish, by a fair preponderance of the evidence, that defendant misrepresented the condition of the subject vehicle. Plaintiff has also failed to establish, by a fair preponderance of the evidence, that defendant violated the provisions of Connecticut General Unfair Trade Practices Act. Neither defendants' failure to include the express warranty required by General Statutes, Section 42-221, nor any acts or omissions of defendants with regard to the provisions of the WRITTEN PROMISES section of said contract rise to the level of CUTPA violation.
 VI
There remains plaintiff's claim of unjust enrichment. "Unjust CT Page 2060 enrichment applies `wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available for action on the contract.'" 5 Williston Contracts (Rev. Ed.) § 1479. "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit, which has come to him at the expense of another." Providence Electric Co. v. Sutton Place,
Inc. 161 Conn. 242, 246. Here we have such a situation. Defendant failed to include the express warranty provisions of General Statutes, Section 42-221 in the contract at issue. He emerged from this contretemps with plaintiff's five hundred dollar deposit as well as the motor vehicle, which had been improved by repairs and tires.
Plaintiff has established, by a fair preponderance of the evidence, that defendants have been enriched unjustly.
When unjust enrichment is established, the measure of recovery focuses on the benefit to the defendant rather than on the loss to the plaintiff. The damages shall be the benefit received. Monarch Accounting Supplies, Inc. v. Prezioso,170 Conn. 659, 666.
Under the contract, the defendant sold the motor vehicle to the plaintiff for a total price of $4,070.00. After repossessing said vehicle defendant sold it within a month to a third party at a price of $4,300.00. The court finds the benefit to the defendant to be the difference between the sale price of the vehicle before the plaintiff's repairs and the sale price of the vehicle after said repairs or $230.00. Defendant was unjustly enriched by this amount plus the amount of plaintiff's initial deposit of $500.00.
Judgment, accordingly, may enter for the plaintiff the amount of seven hundred thirty ($730.00) dollars.
By the Court
Downey, J.